## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03569-NYW

OFFICER JEREMIAH STOKER, and
ELIZABETH STOKER,

      Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

      Defendant.

---

### MEMORANDUM OPINION AND ORDER ON PENDING DISPOSITIVE MOTIONS

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on the following two dispositive motions:

      (1)    Plaintiffs' Motion Pursuant to F.R.C.P. 56 to Strike Defendants [sic] Second, third, Sixth, Seventh, and Ninth Affirmative Defenses (the "Motion for Partial Summary Judgment"), filed November 16, 2020, [#52]; and

      (2)    Plaintiffs' Amended Motion for Leave to Amend Complain to Add Exemplary Damages Against Defendant State Farm [sic] Automobile Insurance Company (the "Motion to Amend"), filed November 23, 2020, [#55].

The court considers these Motions pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes, *see* [#14], and concludes that oral argument will not materially assist in the resolution of this matter.  Accordingly, having reviewed the Motions and associated briefing, the applicable case law, and the record before the court, the court **GRANTS IN PART and DENIES IN PART** the Motion for Partial Summary Judgment and **GRANTS IN PART and DENIES IN PART** the Motion to Amend.

## BACKGROUND

This civil action arises out of an insurance dispute between the Stokers and their insurance provider State Farm.  *See* [#1; #6].  On or about November 6, 2016, Plaintiff Officer Jeremiah Stoker ("Officer Stoker"), while on-duty as an officer for the Rocky Ford Police Department, suffered serious injuries during an arrest attempt.  *See* [#6 at ¶¶ 6-13].  At some point while trying to apprehend the suspect, Officer Stoker was dragged by the suspect's vehicle as the suspect attempted to evade arrest.  *See* [*id.* at ¶¶ 7-13].  Officer Stoker sustained severe injuries to his head, back, and lumbar spine, among other damages.  *See* [*id.* at ¶¶ 17-20].

At the time of the incident, the Stokers were insured under several State Farm insurance policies (the "Policies"), which included uninsured motorist coverage.  [*Id.* at ¶¶ 24-25].  On or about January 11, 2017, Plaintiffs requested that State Farm provide any policies that covered the incident.  *See* [*id.* at ¶ 28].  Over the ensuing months, Plaintiffs requested information regarding coverage under the Policies and Officer Stoker submitted a medical authorization and medical records associated with the incident.  *See* [*id.* at ¶¶ 29-34].  During that time, State Farm allegedly did not disclose all policies that provided coverage to the Stokers for the incident.  *See* [*id.*].  Then, about December 10, 2018, Plaintiffs informed State Farm that they had yet to receive an evaluation of their uninsured motorist ("UIM") claim; State Farm responded over a month later that a new adjuster had been assigned to the UIM claim and was still evaluating it.  *See* [*id.* at ¶¶ 35-37].

Despite the Stokers repeated requests, State Farm did not provide an offer on the UIM claim until about May 30, 2019, in the amount of $65,000.  *See* [*id.* at ¶¶ 38-40].  The Stokers advised State Farm that the $65,000 offer was insufficient to cover all of Officer Stoker's medical expenses and future damages and provided additional documentation of damages.  *See* [*id.* at ¶ 41].  Between, August and October 2019, Officer Stoker continued to provide documentation of his

damages to support a higher evaluation of his UIM claim. *See* [*id.* at ¶¶ 42-50]. During that time, State Farm requested an additional medical release, despite receiving one from Officer Stoker nearly a year earlier, and paid Officer Stoke only $20,506.66 in undisputed benefits. *See* [*id.* at ¶¶ 42-53].

Plaintiffs then initiated this civil action in the District Court for Arapahoe County on or about November 4, 2019, later removed by State Farm to this District under 28 U.S.C. § 1332. *See* [#1; #6]. Pursuant to the operative First Amended Complaint, Plaintiffs asserts claims against State Farm for (1) breach of contract ("Claim 1"); (2) bad faith breach of an insurance contract ("common law bad faith" or "Claim 2"); and (3) unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-13-1115, -1116 ("statutory bad faith" or "Claim 3"). *See* [#6]. State Farm answered the First Amended Complaint on December 26, 2019. [#12]. State Farm asserts the following affirmative defenses: (1) Plaintiffs fail to state a plausible claim for relief, coverage issues exist that may bar Plaintiffs' claims, and Plaintiffs' UIM claim is fairly debatable ("First Affirmative Defense"); (2) certain conditions set forth in 3 Colo. Code Regs. 702-5:5-1-14, § 4(A)(2) may bar Plaintiffs' claims ("Second Affirmative Defense"); (3) Plaintiffs failed to cooperate with State Farm in breach of the Policies ("Third Affirmative Defense"); (4) Plaintiffs' claims are fairly debatable ("Fourth Affirmative Defense"); (5) Plaintiffs failed to mitigate damages ("Fifth Affirmative Defense"); (6) Plaintiffs failed to perform and/or comply with all terms of the Policies ("Sixth Affirmative Defense"); (7) Officer Stoker's claimed injuries may stem from either preexisting conditions or arose subsequent to the incident ("Seventh Affirmative Defense"); (8) Plaintiffs' claims may be limited or barred by all applicable set-offs under Colorado Law ("Eighth Affirmative Defense"); and (9) Plaintiffs' claims may be barred, in whole or in part,

by Plaintiffs' own contributory negligence or the negligence of non-parties ("Ninth Affirmative Defense").  *See* [*id.*].

The undersigned conducted a Scheduling Conference with the Parties on January 30, 2020. [#16].  The Scheduling Order set the following deadlines: September 28, 2020 as the discovery deadline; October 30, 2020 as the dispositive motions deadline; July 27, 2020 as the affirmative experts deadline; August 27, 2020 as the rebuttal experts deadline; and October 30, 2020 as the Rule 702 motions deadline.  *See* [#17 at 12-14].  Per Plaintiffs' request, the court extended the affirmative experts deadline to September 27, 2020, the rebuttal experts deadline to October 27, 2020, the dispositive motion deadline to November 16, 2020, and the discovery deadline to November 20, 2020.  *See* [#40].  The court later granted State Farm a brief extension of the Rule 702 deadline to November 6, 2020.  *See* [#47].

Presently before the court is Plaintiffs' Motion for Partial Summary Judgment and Motion to Amend.[1]  The Motions are all ripe for disposition.  Accordingly, I consider each below.

## ANALYSIS

### I.    Motion for Partial Summary Judgment

#### A.    Legal Standard

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189,

---

[1] The Parties have also filed various motions regarding disclosed experts, which the court will address by separate order.

1194 (10th Cir. 2011) (internal citations and quotation marks omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  At all times, the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy its burden at summary judgment the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the nonmovant's evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial, only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).  Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury."  *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

### B.      Application

#### i.      Material Facts

The court draws the following facts from the record before the court.  These facts are undisputed unless otherwise noted.

1.      On or about November 6, 2016, Officer Stoker, while on-duty as an officer for the Rocky Ford Police Department, suffered injuries to his neck and back during an arrest attempt. *See* [#55-1; #55-5; #66-2].[2]

2.      Consistent with his neurosurgeon, [#52-3; #52-11; #52-12], two independent medical examiners have concluded that Officer Stoker's back injury and resulting pain are directly related to the incident.  *See* [#52-4 at 16; #52-13 at 4, 5].

3.      At the time of the incident, the Stokers were covered by at least three State Farm policies providing for UIM benefits.  *See generally* [#66-2].

4.      At least one State Farm policy applicable to the Stokers' UIM claim provided that the insured's duties included:

(3) provid[ing] written authorization:

(a) for [State Farm] to obtain:

---

[2] Regardless of whether Rocky Ford Police Department censured Officer Stoker's conduct on November 6, 2016 as dishonest or in violation of direct orders, *see* [#61 at 11; #69-2 at 154:21-156:9], this court is not persuaded that these facts affect proper analysis of the Motion for Partial Summary Judgment.  First, the exhibit offered by State Farm [#61-8] does not appear to be one excepted from the rule against hearsay under Rule 803(6).  Moreover, the exhibit is likely inadmissible under Rule 407 to establish Officer Stoker's purported negligence or culpable conduct, because it sets out the Rocky Ford Police Department's internal investigation and ensuing discipline to ensure the incident did not occur again, rather than as an assessment of his negligence as compared to Ms. Stanley.  *See Zurich Am. Ins, Co. v. Bulk Carrier Servs.*, No. 09-CV-01960 LTB-MJW, 2011 WL 572361, at *2 (D. Colo. Feb. 15, 2011) (holding that a disciplinary letter issued to the defendant's employee following the accident giving rise to the lawsuit was inadmissible under Rule 407 to establish the defendant's negligence or culpable conduct). Indeed, even a review of the document reflects that the conduct at issue included far more than his pursuit of Ms. Stanley.  [#61-8].

(i) medical bills;
(ii) medical records;
(iii) wage information;
(iv) salary information;
(v) employment information;
(vi) and any other information

[State Farm] deem[s] necessary to substantiate the claim; and

(b) that does not in any way:

(i) restrict[s] [State Farm] from performing [its] business functions in obtaining records, information, and data;
(ii) limit[s] [State Farm's] ability to use or retain records, information . . .

[#61-6].

5.    Despite his injuries, Officer Stoker continued to go bowling, *see* [#52-1 at 161:5-16]; both his neurosurgeon as well as a Worker's Compensation Medical Examiner opined that Officer Stoker could do so without compromising his recovery, *see* [#52-2 at 1; #52-4 at 18][3]—Plaintiffs provided the Worker's Compensation Medical Examiner's report with their Second Supplemental Disclosures in this litigation, [#61-5].

6.    About April 2017, Officer Stoker's neurosurgeon opined that Officer Stoker could "return to work full duty," [#52-2 at 1]—Plaintiffs provided this documentation to State Farm with their Third Supplemental Disclosures in this civil action, [#61-4].

---

[3] State Farm attempts to cast doubt on this fact by highlighting another medical provider's opinions suggesting Officer Stoker should not return to bowling, which were documented within the Worker's Compensation Medical Examiner's report. *See* [#61 at 4, 11]. This, however, is insufficient to create a genuine dispute of material fact because State Farm fails to establish any exception that would render this hearsay within hearsay admissible. *See Regan–Touhy v. Walgreen Co.*, 526 F.3d 641, 650 (10th Cir. 2008) (explaining that for hearsay within hearsay to be admissible under Rule 805 of the Federal Rules of Evidence, "a hearsay exception must apply to each link of the chain.").

7.     Because Officer Stoker's back pain did not improve with conservative treatments, his neurosurgeon recommended surgical intervention, *see* [#52-3; #52-11; #52-12]—a conclusion approved by the Worker's Compensation Medical Examiner pre-litigation, [#55-1 at 17], and State Farm's Rule 35 Independent Medical Examiner post-litigation.  *See* [#52-4 at 17; #52-13 at 6].[4]

8.     At some point,[5] the Stokers filed a UIM claim with State Farm.  *See generally* [#52-5; #69-4].

9.     On or about August 30, 2018, Officer Stoker provided State Farm with medical records as well as a signed Authorization for Release of Information (the "Release") allowing for the release of Officer Stoker's medical records to be sent to his counsel.  *See* [#61-2].

10.     On or about August 7, 2019, State Farm informed the Stokers' counsel that it could not accept the Release because the Release did not allow for the release of medical records to State Farm and so State Farm provided its own release for Officer Stoker's medical records, *see* [*id.* at 4], which Officer Stoker signed and returned on or about October 3, 2019, [#52-9].

11.     On or about August 27, 2019, State Farm claims adjuster Betsy Nesmith ("Ms. Nesmith") determined that the non-party involved in the incident was 100% liable.[6]  [#52-7; #66-13 at 241:1-7; #69-1; #69-6 at 240:14-25].

---

[4] State Farm again seeks to dispute this material fact by highlighting a conflicting medical opinion found within the Worker's Compensation Medical Examiner's report.  *See* [#61 at 4].  As noted, State Farm offers no suggestion as to how this information is admissible.  *See supra* note 3.

[5] Neither the operative Amended Complaint nor the briefing associated with the instant Motions identify a specific date of filing of the UIM claim.  *See generally* [#6].

[6] State Farm attempts to dispute this fact by arguing that this "verbiage" does not "constitute[] an admission concerning any other potential causative factors for Plaintiffs' claimed damages or that the liability investigation was complete as such investigations are ongoing."  [#61 at 5].  But attorney argument is not sufficient to rebut a material fact at summary judgment, as State Farm must direct the court to competent evidence and cannot rely merely on a denial of this material fact. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).

12.     On March 25, 2019, Ms. Nesmith sent a letter to the Stokers' counsel advising that State Farm "h[as] now received all information to complete [its] evaluation" for Officer Stoker, but noted that it did not have wage loss documentation.  [#52-10].

13.     While suggesting she would have preferred more cooperation from the Stokers, Ms. Nesmith testified that State Farm never issued a "reservation of rights or noncooperation denial because of this."  [#52-14 at 261: 8-13].

14.     Given various disputes between the Parties, the Stokers initiated this civil action on or about November 4, 2019 in the District Court for Arapahoe County.  *See* [#1; #5].

### ii.     Analysis

Plaintiffs move for summary judgment on State Farm's Second, Third, Sixth, Seventh, and Ninth Affirmative Defenses.  They argue that State Farm fails to put forth any evidence supporting these defenses, or at least creating a genuine dispute of material fact.  *See* [#52; #69].  State Farm opposes the Motion for Partial Summary Judgment, arguing that the evidence offered by Plaintiffs belies their contention that no genuine disputes of material fact exist.  *See* [#61].  I consider the Parties' arguments below.

**<u>Second Affirmative Defense</u>**.  State Farm asserts that one or more conditions under 3 Colo. Code Regs. 702-5:5-1-14, § 4(A)(2) (the "Regulation") may bar Plaintiffs' claims.  For the following reasons, I conclude summary judgment in favor of Plaintiffs on the Second Affirmative Defense is not warranted.

The Regulation requires all insurers to "make a decision on claims and/or pay benefits due under the policy within sixty (60) days after receipt of a valid and complete claim unless there is a reasonable dispute between the parties concerning such claim," "provided the insured has complied with the terms and conditions of the policy of insurance."  3 Colo. Code Regs. 702-5:5-

1-14, § 4(A)(1)(a).  The Regulation "sets forth factors to be considered in determining if a claim

is valid and complete or if a reasonable dispute exists." *Toy v. Am. Family Mut. Ins. Co.*, No. 12-

CV-01683-PAB-MJW, 2014 WL 483473, at *1 (D. Colo. Feb. 6, 2014).  The Regulation deems a

valid and complete claim received by the insurer when:

> (1) All information and documents necessary to prove the insured's claim have
> been received by the insurer; (2) A reasonable investigation of the information
> submitted has been completed by the insurer, in compliance with § 10-3-1104,
> C.R.S.; (3) The terms and conditions of the policy have been complied with by the
> insured; (4) Coverage under the policy for the insured has been established for the
> claim submitted; (5) There are no indicators on the claim requiring additional
> investigation before a decision can be made; and/or (6) All repairs have been
> satisfactorily completed and the insured has given authorization to pay; and/or
> (7) Negotiations or appraisals to determine the value of the claim have been
> completed; and/or (8) Any litigation on the claim has been finally and fully
> adjudicated.

3 Colo. Code Regs. 702-5:5-1-14, § 4(A)(2)(a).  The Regulation further defines reasonable dispute

to mean:

> (1) Information necessary to make a decision on the claim has not been submitted
> or obtained; (2) Conflicting information is submitted or obtained and additional
> investigation is necessary; (3) The insured is not in compliance with the terms and
> conditions of the policy; (4) Coverage under the policy for the loss claimed has not
> been determined; (5) Indicators are present in the application or submission of the
> claim and additional investigation is necessary; [or] (6) Litigation is commenced
> on the claim . . . .

*Id.* § 4(A)(2)(b).  Though not conclusive evidence, the Regulation may be relevant to determining

whether an insurer acted unreasonably in handling an insured's claim.  *See TBL Collectibles, Inc.*

*v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1182 (D. Colo. 2018).

Plaintiffs argue that State Farm cannot present any evidence to establish that the Regulation

may bar Plaintiffs' claims.  [#52 at 5].  According to Plaintiffs, State Farm's March 25, 2019

correspondence admits that State Farm had received a complete claim, and State Farm's designated

bad faith expert John M. Palmeri ("Mr. Palmeri") does not offer any opinions that the Regulation

may bar Plaintiffs' claims.[7]   *See* [*id.*; #69 at 4-6].   State Farm responds that it did not have a complete and valid claim because Officer Stoker's injuries were the subject of varying medical opinions and recommendations, and the March 25 correspondence belies Plaintiffs' contention given that Ms. Nesmith requested wage loss documentation—a part of Plaintiffs' UIM claim.   [#61 at 8].

To start, the court notes that the record presented by the Parties in the instant Motion for Partial Summary Judgment is far from robust.   Nonetheless, I find that genuine disputes of material fact exist as to the completeness of Plaintiffs' UIM claim and whether a reasonable dispute over the amount of coverage existed.   Most notably, State Farm's March 25 correspondence requests additional wage loss documentation, suggesting State Farm did not have all required information to assess Plaintiffs' UIM claim,[8] and Plaintiffs provided additional medical documentation after commencing this litigation.   *See* Material Facts *supra* ¶¶ 5-6, 12.   Indeed, Plaintiffs dispute State Farm's assertions that it received additional medical evidence only after Plaintiffs commenced this lawsuit, arguing that they provided State Farm a medical release as early as August 30, 2018.   [#69 at 3].   But this only further highlights the disputes of material fact regarding the completeness of Plaintiffs' UIM claims, because the Material Facts reveal that State Farm could not and did not utilize the Release and requested a State Farm approved medical release later in the claims-handling process.   *See* Material Facts *supra* ¶¶ 9-10.   This also suggests disputes of material

---

[7] Plaintiffs have moved to exclude Mr. Palmeri's opinions under Rule 702 of the Federal Rules of Evidence.   *See* [#46].   For this reason, the court does not consider any opinions offered by Mr. Palmeri, but this does not affect the court's consideration of the Motion for Partial Summary Judgment.   To the extent the court considers Mr. Palmeri's expert report, it limits its discussion to only those portions that the Parties cannot reasonably dispute.

[8] Indeed, the Stokers appear to concede this point in their Reply, arguing that they provided State Farm "pay stubs and W-2 information outlining [Officer Stoker's] lost wages" on July 26, 2019, after State Farm requested such information.   *See* [#69 at 7; #69-4].

fact as to whether Plaintiffs complied with the terms of the underlying Policies. *See* 3 Colo. Code Regs. 702-5:5-1-14, §§ 4(A)(2)(a)(3), (A)(2)(b)(4) (explaining that one factor used in determining the completeness of the claim and whether a reasonable dispute exists is whether the insured has complied with all terms of the policy).

Additionally, the court notes that its review of the entire record in this case, *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."), reveals even more disputes of material facts regarding the completeness and validity of Plaintiffs' UIM claim and whether a reasonable dispute existed as to the amount of the UIM claim. *See generally* [#55 and #66 and their accompanying exhibits]. Namely, this evidence reveals that throughout the claims-handling process there remained issues as to the amount of coverage available to Plaintiffs, including additional coverage from another insurance provider, as well as the cost of Officer Stoker's future medical treatment. *See generally* [*id.*]. Although State Farm fails to alert the court to much of this evidence, it remains Plaintiffs' burden to demonstrate the appropriateness of summary judgment. *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) ("Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its "initial responsibility" of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law."). This they have not done, and thus summary judgment in favor of Plaintiffs on the Second Affirmative Defense is not warranted.

In reaching this conclusion, the court makes no determination as to whether State Farm complied with the Regulation or whether its conduct was reasonable under the circumstances. *See Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1228 n.7 (10th Cir. 2016) ("The regulations only provide minimum standards to avoid penalties. Although an insurer may act unreasonably if it

violates the regulation, it does not follow an insurer acts reasonably if it meets the regulation's minimum standards.").

**Third and Sixth Affirmatives Defenses**.  In its Third Affirmative Defense, State Farm asserts that Plaintiffs' claims may be barred given their failure to cooperate—a condition imposed under their insurance policy.  Relatedly, State Farm asserts in its Sixth Affirmative Defense that the Plaintiffs failed to satisfy and/or comply with all provisions or conditions precedent under their insurance Policies.  I conclude that summary judgment in favor of Plaintiffs is not warranted on the Third and Sixth Affirmative Defenses.

To recover for breach of contract under Colorado law, a plaintiff must prove:

1.  the existence of a contract,

2.  plaintiff's performance or a justification for her nonperformance,

3.  defendant's failure to perform, and

4.  damages.

*Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1033 (10th Cir. 2018) (applying Colorado law).  But even if the plaintiff can demonstrate all four elements, she may forfeit her ability to recover under an insurance contract "when, in violation of a policy provision," she "fails to cooperate with the insurer in some material and substantial respect." *Ahmadi v. Allstate Ins. Co.*, 22 P.3d 576, 579 (Colo. App. 2001).  "[T]his failure to cooperate [must] materially and substantially disadvantage[] the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015).  An inconsequential lack of cooperation is immaterial, and an insured's failure to cooperate may be excused if due to a mistake or a showing that there was no exercise of bad faith. *See Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989).  "[T]he question of whether the insured failed to cooperate with the insurer is a question of

fact for the trial court." *See Summit Bank & Tr. v. Am. Modern Home Ins. Co.*, 71 F. Supp. 3d 1168, 1176 (D. Colo. 2014).

The Stokers argue that they are entitled to summary judgment on State Farm's Third and Sixth Affirmative Defenses because State Farm fails to proffer any evidence that Plaintiffs were not cooperative or failed to comply with any terms of the Policies. *See* [#52 at 6-7; #69 at 6-7]. Rather, Plaintiffs assert, the undisputed material facts indicate the Stokers were more than cooperative with State Farm, as admitted by Ms. Nesmith. *See* [#52 at 6-7; #69 at 6-7]. State Farm counters that the Material Facts, at the least, reveal a genuine dispute regarding Plaintiffs' cooperation and compliance with all terms of the Policies. [#61 at 9-10]. This is because Plaintiffs provided an incorrect medical release, prohibiting State Farm from obtaining all necessary medical information needed for its evaluation, and then the Stokers waited nearly three months before returning the correct one sent by State Farm, which was roughly one month before the Stokers initiated this suit. [*Id.* at 10]. Although neither Party offers the express contractual language regarding cooperation, the court concludes that there exist genuine disputes of material fact as to the Stokers' cooperation and compliance with the provisions of their Policies.

To start, although Ms. Nesmith testified that State Farm did not issue a reservation of rights letter or a denial of the Stokers' UIM claim based on noncooperation, she testified that she "would have liked to have had some cooperation in regard to the information that was requested [about Officer Stoker's future lumbar spine surgery]." [#52-14 at 261:4-14]. And the court's review of the entire record before the court appears to reflect some difficulties in obtaining the type of information that State Farm wanted regarding Officer Stoker's future surgery. *See, e.g.*, [#55-15 at 3, 4; #66-2 at 3, 4; #66-10; #66-13 at 244:20-245:5].

14

Likewise, at least one of the Policies required the Stokers to provide written authorization for State Farm to obtain medical bills and records, among other things, "that does not in any way[] restrict [State Farm] from performing [its] business functions in obtaining records [or] information . . . [or] limit [its] ability to use or retain records[.]"  [#61-6].  The Material Facts reveal that the Stokers provided State Farm with written authorization that State Farm could not use because it directed the release of records not to State Farm but to Plaintiff's counsel and then did not return an appropriate authorization for nearly three months after it was requested.  *See* Material Facts *supra* ¶¶ 9-10.  Regardless of whether State Farm acted reasonably in waiting so long to contact the Stokers about the improper authorization, the trier of fact could reasonably infer that the Stokers did not cooperate with State Farm and failed to comply with the provision requiring written authorization in a way that does not restrict State Farm's ability to request and obtain relevant information.  *See Summit Bank & Tr. v*, 71 F. Supp. 3d at 1176 (explaining that whether an insured failed to cooperate is a question of fact).

Nor have Plaintiffs established that any noncooperation was trivial in nature.  *Cf. Harris v. Allstate Ins. Co.*, No. 09-CV-01953LTBMJW, 2010 WL 2543560, at *4 (D. Colo. June 22, 2010) (concluding the plaintiff failed to cooperate with the insurer where the plaintiff disregarded the clear terms of the insurance policy and refused to provide an approriate medical release).  Indeed, the Material Facts reveal that the Stokers produced certain documentation only after commencing this civil action.  *See* Material Facts *supra* ¶¶ 5-6.  And a trier of fact could reasonably infer from the entire record that difficulties arose during the evaluation of Plaintiffs' UIM claim based on a lack of relevant medical and financial information.  Thus, I conclude Plaintiffs fails to carry their burden of demonstrating that summary judgment on State Farm's Third and Sixth Affirmative Defenses is warranted.  *See Stoole v. Metro. Prop. & Cas. Ins. Co.*, No. 17-CV-0613-NYW, 2018

WL 3126112, at **5, 6-7 (D. Colo. June 26, 2018) (concluding that genuine disputes of material fact existed as to whether the plaintiff failed to cooperate by refusing to sign a medical release, though she provided medical documentation to the insurer, and whether this was material and disadvantageous to the insurer). Again, in so deciding, this court does not pass on the substantive merits of the Third and Sixth Affirmative Defenses.

**Seventh Affirmative Defense**. State Farm asserts that Plaintiffs' "claimed injuries, damages, and/or losses may be the sole and proximate result of an injury sustained or a condition existing prior to and/or arising subsequent to the motor vehicle accident at issue in this case." [#12 at 6]. Plaintiffs argue that State Farm fails to provide any evidence demonstrating a genuine dispute of material fact as to this affirmative defense. This is because the unrefuted evidence demonstrates that Officer Stokers' back injury and resulting pain is directly related to the November 6, 2016 incident. *See* [#52 at 8-10; #69 at 8]. I respectfully agree with the Stokers.

The Material Facts reveal that at least three medical providers have directly linked Officer Stoker's back injury and resulting pain to the incident on November 6, 2016. *See* Material Facts *supra* ¶ 2. State Farm offers no admissible evidence to refute this finding, and instead argues that Officer Stoker sought and received treatment for shoulder problems prior to the incident on November 6, 2016 and unidentified medical providers offered conflicting opinions regarding whether bowling exaccerbated Officer Stoker's back injury. *See* [#61 at 11]. But, as the Stokers argue, they do not claim damages associated with any shoulder injury. *See generally* [#6]. Indeed, Officer Stoker testified that while he initially complained of shoulder pain following the incident, he had not sought or received any treatment for his shoulders. [#69-5 at 176:3-25]. State Farm proffers no evidence suggesting otherwise.

Nor does the court find convincing State Farm's suggestion that bowling somehow exacerbated Officer Stoker's back injury. Most importantly, State Farm offers no admissible evidence to refute the evidence offered by the Stokers that two medical providers opined to the contrary. *See supra* note 3. Even if the court were to conclude that bowling exacerbated Officer Stoker's back injury, which is not clear from the record, the Material Facts demonstrate that Officer Stoker continued to bowl <u>after</u> the incident on November 6, 2016, and State Farm offers no evidence suggesting bowling resulted in a pre-incident back injury that may have contributed to Officer Stoker's back injuries post-incident. Thus, this court **GRANTS** summary judgment in favor of Plaintiffs as to State Farm's Seventh Affirmative Defense and **DISMISSES** State Farm's Seventh Affirmative Defense.

**Ninth Affirmative Defense**. In its Ninth Affirmative Defense, State Farm asserts that Plaintiffs' or others' own negligence may reduce or bar recovery for Plaintiffs' claims pursuant to Colo. Rev. Stat. § 13-21-111. [#12 at 7]. Colorado law recognizes comparative negligence,[9] and provides that comparative negligence may dimish the amount of damages recoverable depending on the degree of fault attributable to the parties. Colo. Rev. Stat. § 13-21-111(1). Comparative negligence requires the plaintiff to "act as a reasonably prudent person by avoiding undue risk of harm to himself," but the affirmative defense applies only when the "evidence would substantiate a finding that both parties are at fault." *Dillon Companies, Inc. v. Hussmann Corp.*, 163 F. App'x 749, 753 (10th Cir. 2006); *accord Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1218 (Colo. App. 2010) (applying comparative negligence to an underinsured motorist claim). "Issues of negligence and contributory negligence are generally questions for the finder of fact to

---

[9] Because Colorado law identifies the doctrine as comparative negligence, I do the same for the sake of consistency. *See* Colo. Rev. Stat. § 13-21-111.

determine, and the trial court should not rule, as a matter of law, except where the facts are undisputed and reasonable minds could draw but one inference from them." *Blatchley v. Cunningham*, No. 15-CV-00460-WYD-NYW, 2017 WL 4333993, at *2 (D. Colo. June 21, 2017) (citing Colorado law).

The Material Facts reveal that State Farm determined that the non-party involved in the November 6, 2016 incident was 100% liable for the incident. *See* Material Facts *supra* ¶ 11. State Farm offers no admissible evidence to refute this fact. Rather, State Farm argues that this "verbiage" does not "constitute[] an admission concerning any other potential causative factors for Plaintiffs' claimed damages or that the liability investigation was complete as such investigations are ongoing." [#61 at 5]. But attorney argument is not sufficient to rebut a material fact at summary judgment, as State Farm must direct the court to competent evidence and cannot rely merely on a denial of this material fact. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment). Further, as discussed above, State Farm fails to offer any admissible evidence suggesting Officer Stoker's bowling exacerbated his back injury. *See supra* note 3. Finally, as noted, the court is not convinced that Officer Stoker's purported reprimand stemming from the November 6, 2016 incident is relevant to the instant Motion for Partial Summary Judgment, and State Farm has not established that the evidence relied upon is admissible under Rule 407 of the Federal Rules of Evidence to establish Officer Stoker's negligence as compared to the non-party's negligence. *See supra* note 2. The Rocky Ford Police Department may have determined that Officer Stoker did not appropriately discharge his duties as a police officer, but that determination is not probative of

his responsibility in the conduct that caused his injury, i.e., the non-party's operation of a motor vehicle to evade arrest.

Additionally, State Farm has not designated any non-parties at fault in this civil action pursuant to Colo. Rev. Stat. § 13-21-111.5(3).  To do so, "[a] party must allege the basis for believing the non-party legally liable to the extent the non-party's acts or omissions would satisfy all the elements of a negligence claim.  A designation that alleges only causation is insufficient as a matter of law." *Blatchley v. St. Anthony Summit Med. Ctr.*, 822 F. App'x 663, 667 (10th Cir. 2020) (quoting *Redden v. SCI Colorado Funeral Services*, 38 P.3d 75, 81 (Colo. 2001)). Ultimately, the unrefuted evidence demonstrates that the non-party involved in the November 6, 2016 incident was 100% liable.  Thus, this court **GRANTS** summary judgment in favor of the Stokers and **DISMISSES** State Farm's Ninth Affirmative Defense.

### C.      Conclusion

Based on the foregoing, the court concludes that the Stokers are entitled to summary judgment as to State Farm's Seventh and Ninth Affirmative Defenses, but genuine disputes of material fact exist as to State Farm's Second, Third, and Sixth Affirmative Defenses.  Thus, I **GRANT IN PART and DENY IN PART** the Motion for Partial Summary Judgment.

## II.     Motion to Amend

### A.      Legal Standard

Rule 15(a)(2) and Rule 16(b)(4) of the Federal Rules of Civil Procedure generally apply when a party seeks to amend its pleading after the deadline set in the Scheduling Order.  *See Gorsuch, Ltd., B.D. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  But Colo. Rev. Stat. § 13-21-102 governs proposed amendments concerning exemplary damages. Pursuant to section 13-21-102(1.5)(a), a plaintiff cannot move for exemplary damages in the initial

pleading and may seek to amend the pleading to add a claim for exemplary damages "only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure" and if she establishes prima facie proof of a triable issue.  In finding that there is no direct conflict between this statute and the Federal Rules of Civil Procedure and that application of the statute would not necessarily result in forum shopping or the inequitable administration of the law, courts in this District have held that § 13-21-102, rather than Rules 15(a) or 16(b), controls whether to permit the amendment of a claim for exemplary damages.  *See Wollam v. Wright Medical Group, Inc.*, No. 1:10-cv-3104-DME-BNB, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012) (applying Colo. Rev. Stat. § 13-21-102 to motion to amend to add exemplary damages claim); *Witt v. Condominiums at the Boulders Ass'n,* No. 04-cv-02000-MSK-OES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006) (finding the court must give effect to Colorado statute in evaluating whether exemplary damages claim properly brought in diversity action).  *See also Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007) (applying *Jones v. Krautheim,* 208 F. Supp. 2d 1173, 1179 (D. Colo. 2002)).  Even with the application of § 13-21-102, however, the court may deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice. *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (citation omitted).

Section 13-21-102 provides that an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct."  Colo. Rev. Stat. § 13-21-102(1)(a).  "'[W]illful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  *Id.* § 13-21-102(1)(b).  "Simple negligence cannot support such an award"; rather,

"where a defendant is conscious of both its conduct and the existing conditions, and knew or should have known that injury would result, the requirements of [§] 13-21-102 are met." *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 314 (Colo. App. 2009). The purpose of the award of punitive damages is to punish the wrongdoer, not compensate for injuries. *See Lira v. Shelter Insurance Co.*, 913 P.2d 514, 517 (Colo. 1996).

As to the requirement of a prima facie showing, "[p]rima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Stamp*, 172 P.3d at 449 (citation omitted). Such proof is established by "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Id.* (quoting *Leidholt v. Dist. Court*, 619 P.2d 768, 771 n.3 (Colo. 1980)). Parties may offer this proof in the form of discovery and by evidentiary means. *Id.* "The question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Id.* (citation omitted). In reviewing the Motion to Amend, this court considers only the "preliminary question" of whether Plaintiffs have made a prima facie showing that the injury complained of is attended by willful and wanton behavior, not whether they will ultimately prevail. *Am. Econ. Ins. Co.*, 2007 WL 160951, at *4.

## B.     Application

Plaintiffs move to amend their First Amended Complaint to add a request for exemplary damages for their common law bad faith claim.[10] A common law bad faith claim requires not only that an insurer acted unreasonably, but also the additional proof of the insurer's knowledge or

---

[10] Plaintiffs may not recover exemplary damages for their breach of contract claim, *see Mortg. Fin., Inc. v. Podleski*, 742 P.2d 900, 902-03 (Colo. 1987), and at least one judge in this District has concluded that exemplary damages are unavailable for statutory bad faith claims under Colo. Rev. Stat. § 10-13-1115, *see Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1074 (D. Colo. 2019). Thus, the availability of exemplary damages is limited to Plaintiffs' common law bad faith claim.

reckless disregard as to the validity of an insured's claim. *Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1107 (D. Colo. 2013). Reliance on the same alleged bad acts underlying the common law bad faith claim is not enough. *Cf. Lopez v. United Fire & Cas. Co.*, 318 F. App'x 628, 635 (10th Cir. 2009) (explaining that under Colorado law, a common law bad faith claim encompasses an entire course of conduct and is cumulative, and so an insurer can act in bad faith without also acting willfully and wantonly).

Plaintiffs argue that State Farm acted willfully and wantonly by unduly delaying the evaluation of Officer Stoker's UIM claim, refusing to include Officer Stoker's back surgery into its evaluation, and ultimately offering any "egregiously low" settlement offer. State Farm opposes the Motion to Amend, arguing that Plaintiffs cannot establish a prima facie case of willful and wanton conduct because Plaintiffs' own conduct lead to delays in evaluating their UIM claim and much of the conduct complained of occurred after Plaintiff initiated suit when State Farm's duty to negotiate, settle, and pay was suspended. State Farm also contends that the court should deny the Motion to Amend due to delay, undue expense, and prejudice. I consider the Parties' arguments below.

As explained, "[w]illful and wanton conduct means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Wake v. SSC Greeley Centennial Operating Co., LLC*, 991 F. Supp. 2d 1143, 1147 (D. Colo. 2013) (internal quotations omitted). Simple negligence is not enough. *See Wortman v. Reinsbach*, No. 18-CV-02419-MSK-NYW, 2019 WL 7833968, at *4 (D. Colo. Oct. 17, 2019). Instead, a defendant acts willfully and wantonly where it "is conscious of [its] conduct and the existing conditions and knew or should have known that injury would result[.]" *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66

(Colo. 2005).  That is, "[c]onduct is willful and wanton if it is a dangerous course of action that is consciously chosen with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result."  *Stamp*, 172 P.3d at 449 (internal quotations omitted).

Plaintiffs need not put forth sufficient evidence to overcome summary judgment or succeed at trial as to their claimed exemplary damages.  *See Sands v. Integon Nat'l Ins. Co.*, No. 18-CV-00714-PAB-NYW, 2020 WL 8188184, at *7 (D. Colo. Mar. 9, 2020).  For purposes of the Stokers' common law bad faith claim, they must put forth prima facie evidence that State Farm acted heedlessly and recklessly in evaluating the UIM claim without regard to the Stokers' rights.  *See, e.g.*, *Schimek v. Owners Ins. Co.*, No. 16-CV-02197-PAB-STV, 2017 WL 3621833, at *4 (D. Colo. Aug. 23, 2017) (finding prima facie evidence of willful and wanton conduct where the plaintiffs put forth evidence that the insurer offered an egregiously low settlement offer and the claims adjuster did not conduct a fulsome investigation of the claim); *Argo v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-02059-RM-KMT, 2019 WL 4192110, at *3 (D. Colo. Sept. 4, 2019) (finding evidence that insurer improperly concluded that plaintiff suffered from pre-existing conditions despite never requesting prior health records was sufficient prima facie case of willful and wanton conduct).

The Stokers offer several reasons why State Farm's conduct was willful and wanton.  I consider each in turn.

### i.     Officer Stoker's Lumbar Spine Surgery

First, the Stokers argue that State Farm declined to evaluate Officer Stoker's lumbar spine surgery prior to litigation despite two doctors recommending the procedure and Officer Stoker providing State Farm a cost estimate.  *See* [#55 at 12].  Further, even after litigation commenced, State Farm has yet to evaluate Officer Stoker's lumbar spine surgery, this being despite State

Farm's own Independent Medical Examiner acknowledging the need for such surgery. [*Id.* at 14-15]. According to Plaintiffs, State Farm had information establishing the need for the surgery (and acknowledged as much) and its estimated cost, yet still refuses to consider the surgery in its evaluation of the Stokers' UIM claim, which constitutes prima facie evidence of willful and wanton conduct. *See* [*id.* at 12-15; #70 at 6-8]. State Farm appears to contend that it had insufficient evidence of the need for the lumbar surgery until after litigation commenced. [#66 at 12]. Respectfully, the court is unpersuaded that State Farm's arguments preclude the addition of exemplary damages.

The record demonstrates that State Farm was aware of the recommendation of lumbar spine surgery for Officer Stoker at least as early as January 21, 2019, but possibly by August 30, 2018.[11] *See, e.g.*, [#55-2; #55-15; #55-30; #66-2; #66-13 at 243:5-20, 244:7-245:5; #70-1]. The recommendation for surgical intervention is then noted by Mr. Hyland, a State Farm team manager. [#55 at 13 (citing #55-3 at 1)]. By October 15, 2019, Plaintiffs had provided State Farm with the underlying medical records from Dr. Jamrich. [#55-32]. Those records reflect that he had no improvement with more conservative interventions such as injections or physical therapy. [*Id.* at 3]. And yet, even after these additional records, it does not appear that State Farm included the lumbar surgery in its evaluation of Officer Stoker's UM claim.

---

[11] Though Plaintiff points to the 2017 examination performed in the context of his Worker's Compensation Claim, [#55 at 3 (citing #55-1 at 17)], it is not clear from the record when State Farm received Dr. Rauzzino's Report. Defendant contends that it had not received Dr. Rauzzino's Report as of August 30, 2018, [#66 at 2], which is not disputed by Plaintiff on Reply, [#70 at 6]. Neither Party indicates when Dr. Rauzzino's Report was, in fact, submitted to State Farm. As for Dr. Jamrich's original opinion, Plaintiff indicates that such opinion was provided to State Farm as of August 30, 2018. [#55 at 12]. Defendant does not dispute this point precisely, only indicating that Plaintiff's August 30 submission did not include the summary report from Dr. Jamrich offered after the filing of this action. [#66 at 6].

The court acknowledges that claim notes reveal that while Plaintiffs tendered their own cost estimate for the lumbar spine surgery, *see* [#55-15 at 4; #66-2 at 4], Plaintiffs had not disclosed a cost estimate from a treating provider or disclosed which provider Officer Stoker would use so that State Farm could obtain that estimate on its own—despite State Farm's requests for such information. *See* [#55-15 at 3, 4; #66-2 at 3, 4; #66-10; #66-13 at 244:20-245:5]. This evidence serves to rebut Plaintiffs' arguments, but resolution of factual disputes is inappropriate when considering whether to permit exemplary damages to be added to an action, and thus the court must determine whether the evidence put forth constitutes "evidence that, unless rebutted, is sufficient to establish a fact." *Stamp*, 172 P.3d at 449 (citation omitted). Applying this standard, this court finds that if unrebutted, the evidence is sufficient to establish a prima facie case of willful and wanton conduct, i.e., even after receiving information regarding the future surgery and the failure of more conservative treatment, State Farm did not include the surgery in its evaluation of Plaintiffs' UIM claim prior to litigation. *E.g.*, [#66-13 at 246:5-14, 247:14-20, 247:24-248:15, 249:3-16, 251:12-19].

"[W]here an adversarial proceeding is filed and a genuine disagreement as to the amount of compensable damages exists, the duty to negotiate is suspended, and there is no duty to advance payment of claims." *Baker*, 939 F. Supp. 2d at 1109. But as of September 5, 2020, State Farm's own Independent Medical Examiner indicated that the lumbar surgery was medically necessary [#55-5], and at this juncture, State Farm has pointed to no legal authority to indicate that that its obligation under *Fisher v. State Farm*, 419 P.3d 985 (Colo. App. 2015) under such circumstances were suspended. Accordingly, I conclude that taken as unrebutted, the evidence is sufficient to establish a prima facie case that State Farm acted recklessly and/or heedlessly for purposes of

133:10-21 (testifying that State Farm disclosed a known UIM policy and indicated it was looking for more), 136:19-24 (same), 157:7-160:12 (testifying that there was no delay because the inquiry appeared to be run by the medical payments coverage department before being assigned to an adjuster that handles UIM benefits)].   And though Plaintiffs may challenge those reasons as unreasonable or even incredible, they point to no evidence, even taken as unrebutted, that establishes that State Farm's conduct was more than negligent.   And simple negligence is not enough.  *Wortman*, 2019 WL 7833968, at *4.  Further, the Stokers point to no evidence suggesting that the initial claims adjuster was woefully untrained or that she (or any agent of State Farm) intentionally delayed a coverage search.  *See Schimek*, 2017 WL 3621833, at *3 (concluding that the plaintiff put forth prima facie evidence of willful and wanton conduct where the evidence suggested the claims adjuster had little to no experience and did not undertake any investigation into the plaintiff's claimed injuries, and the plaintiff's expert opined that this conduct was well below industry standards).  Thus, this court concludes that the facts regarding the coverage search do not support a prima facie case for exemplary damages.

### iii.   Amount of UIM Coverage

Third, the Stokers argue that State Farm intentionally misrepresented the true amount of UIM coverage available to both the Stokers as well as an additional insurance carrier that provided benefits to Officer Stoker.  *See* [#14 at 16-18; #70 at 9].  According to the Stokers, State Farm knew of at least two additional UIM policies, for a total of $750,000 in UIM benefits, but continued to represent to the Stokers and the additional insurance carrier that Officer Stoker had only $250,000 in UIM benefits under one UIM policy.  *See* [*id.*].

As with the delayed coverage search, there is no dispute that State Farm continually represented that Officer Stoker was covered by only one UIM policy with a $250,000 limit, which

State Farm then used to determine its pro-rata share of coverage with Officer Stoker's additional insurance provider. *See generally* [#55-14; #66-2]. But the evidence the Stokers rely on does not give rise to an inference that State Farm acted with the requisite scienter for purposes of exemplary damages. *See generally* [#55-3; #55-11; #55-12]. The evidence proffered does not reflect that State Farm either willfully withheld the existence of additional UIM policies or affirmatively misrepresented material facts about Officer Stoker's UIM coverage. *See* Colo. Rev. Stat. § 18-5-211(1)(e) (defining insurance fraud to include, *inter alia*, the knowing submission of statements "contain[ing] false material information or withhold[ing] material information" regarding an insurance claim); *cf. Baker v. Wood, Ris & Hames, Prof'l Corp.*, 364 P.3d 872, 883 (Colo. 2016) (stating the elements of fraudulent concealment to include, among others, knowledge of the concealed material fact and the intention that the concealed material fact be acted upon).

For instance, Ms. Nesmith conceded in her deposition that State Farm's representations were inaccurate given that it later learned there were three UIM policies instead of the one, but she testified consistently that State Farm believed there was only one UIM policy at the time of its correspondences and thus did not provide any materially false information. *See* [#66-13 at 72:16-73:10, 73:21-74:3, 76:5-11, 77:9-24, 78:12-79:14, 87:9-13, 87:24-88:9, 89:21-90:22, 92:10-23, 95:1-21, 96:14-21, 97:8-98:9, 99:2-14, 101:3-10, 104:3-25, 106:1-107:9, 109:21-110:21, 111:12-25, 112:6-12, 113:22-114:3, 116:20-117:5, 122:5-11, 131:2-8, 133:10-21, 134:24-135:2, 138:24-140:16, 175:12-22, 238:8-239:4]. And Ms. Nesmith's opinion that State Farm handled the claim without any mistakes (whether the factfinder ultimately agrees) also does not establish a prima facie case of willful or wanton behavior. Further, aside from highlighting the discovery of additional policies in the claim notes, the Stokers fail to offer any evidence giving rise to an inference that State Farm willfully withheld this information from the Stokers. *See generally* [#66-

28

2].   Nor is there any evidence suggesting State Farm was purposefully misrepresenting the available UIM coverage to injure the Stokers or to somehow prejudice the validity of their UIM claim.   Thus, the court is not persuaded that Plaintiffs' allegations regarding the available UIM policies is sufficient to state a prima facie case for exemplary damages.

### iv.        Settlement Offer

Fourth, the Stokers argue that State Farm acted willfully and wantonly by extending an egregiously low settlement offer of $65,000—an amount below the net evaluation of the claim itself.[12]  *See* [#14 at 18-19; #70 at 5].  To be sure, at least one court in this District has found that a low settlement offer could constitute prima facie evidence of willful and wanton conduct where an industry standard expert opines that the settlement violates industry standards and represents an unreasonable valuation of the claim.  *See Schimek*, 2017 WL 3621833, at *4.  But the Stokers offer no such evidence here.

### C.    Conclusion

Based on the foregoing, the court concludes that Plaintiffs have put forth prima facie evidence that State Farm acted willfully and wantonly when handling the Stokers' UIM claim <u>only</u>

---

[12]  While Rule 408 of the Federal Rules of Evidence bars evidence of settlement negotiations to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," the court does not believe the Stokers offer the $65,000 settlement offer for this purpose.  *See* Fed. R. Evid. 408(a)(1).  Further, the court finds State Farm's citation to *Fisher v. State Farm Mutual Automobile Insurance Company*, 419 P.3d 985, 988 (Colo. App. 2015) misplaced, because the issue in *Fisher* was whether State Farm violated Colo. Rev. Stat. § 10-3-1115 by unreasonably refusing to pay undisputed benefits owed to the insured.  Here, the Stokers introduce the settlement offer as one of several purported instances where State Farm acted willfully and wantonly, not to prove or disprove the validity or amount of a disputed claim which is not at issue in the Motion to Amend.  That is not to say that Rule 408 may not preclude the Stokers from offering the settlement offer for purposes of establishing State Farm's purported bad faith later.  *See Etherton v. Owners Ins. Co.*, No. 10-CV-00892-PAB-KLM, 2013 WL 68702, at *8 (D. Colo. Jan. 7, 2013) (precluding under Rule 408 of the Federal Rules of Evidence the insurer's offer to settle the insured's UIM claim, offered as evidence of the insurer's bad faith).

as to State Farm's failure to include the lumbar surgery both pre- and post-litigation. Having so concluded, this court also is unpersuaded that the amendment is prejudicial to State Farm in any way, or that it could have had an impact on State Farm's ability to testify accurately about the facts underlying the handling of Officer Stoker's claim. *See* [#66 at 13]. Accordingly, I **GRANT** the Motion to Amend, but will limit any arguments at trial regarding exemplary damages only to this issue.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     Plaintiffs' Motion for Partial Summary Judgment [#52] is **GRANTED IN PART and DENIED IN PART** as follows:

      a.     Summary judgment shall enter in favor of the Stokers and against State Farm on State Farm's Seventh and Ninth Affirmative Defenses, with Final Judgment to enter in favor of the Stokers and against State Farm on State Farm's Seventh and Ninth Affirmative Defenses pursuant to Rule 54(b) of the Federal Rules of Civil Procedure once the court disposes of all remaining claims and defenses,

      b.     All other affirmative defenses **REMAIN**, and

(2)     Plaintiffs' Motion to Amend [#55] is **GRANTED IN PART and DENIED IN PART,** but the court will limit any arguments at trial regarding exemplary damages to only the conduct of State Farm in evaluating the need for Officer Stoker's lumbar surgery.

DATED: February 22, 2021                BY THE COURT:

                                               _____
                                               Nina Y. Wang
                                                 United States Magistrate Judge